Case number 20-11218, Rodriguez v. Burnside You may begin when you're ready. Good morning, and may it please the Court, Ryan Permono for the appellant, Hjalmar Rodriguez. The district court erred in granting summary judgment because the jury could find that the prison's restrictions on Mr. Rodriguez's religious exercise were not reasonable. It was undisputed that the prison foreclosed Mr. Rodriguez's ability to comply with important religious obligations, yet the prison officials presented no evidence or argument explaining why they didn't simply move Mr. Rodriguez to one of the numerous prison cells equipped with an in-cell shower. Doing so would have largely resolved the conflict between prison interests and Mr. Rodriguez's religious exercise, and under the clearly established Turner Standard, disregarding this obvious, easy accommodation, violated Mr. Rodriguez's rights under the Free Exercise Clause, and the district court's decision should be reversed. As the district court found below, the prison substantially burdened Mr. Rodriguez's religious exercise in two ways. First, they forced Mr. Rodriguez to violate his obligation of modesty. Mr. Rodriguez is a devout Sunni Muslim, and he sincerely believes that he must keep his aura covered at all times when around non-family members in this area from above the navel to just below the knees. As he questioned, he hasn't challenged the shorts, right? That's correct, Your Honor. So, I guess I'm having trouble understanding if the regulation, if his practice requires him to cover from below the knees on up, why wouldn't he challenge the shorts too? I think the reason he didn't challenge the shorts is that he understood that he needs to take prison interests into account, and the prison wanted to move people in boxer shorts, so he requested something that was not quite everything he wanted, which was boxer shorts and a t-shirt, which as Your Honor suggests, left his knees exposed. But, you know, it was, basically he was asking them to comply with this particular prison unit, the special management unit, their own policy, the Georgia Department of Corrections own policy, which says people are escorted, or rather people are strip searched in a t-shirt and boxer shorts. So, I think he was looking to that and saying, just give me that, you know, even though it's not everything his religion required, if that makes sense. Isn't, correct me if I'm wrong, isn't that the regulation for a different part of the prison with inmates who are lower risk? Am I incorrect about that? I'm not understanding Your Honor's question. You said that there's one area where you can wear your t-shirt and boxers to the shower, right? No, Your Honor. What I'm saying is that this whole prison unit, it's called the special management unit, it's also known as the tier three program, and it's about a 200 person unit. The Georgia Department of Corrections policy that applies to that whole unit, unit wide, it doesn't matter where you're housed in that unit, says that when strip searches are conducted, the incarcerated person will strip down to boxer shorts and a t-shirt. Oh, I see. But the shower policy is uniform in the way that it's been applied to your client, right? The shower search policy? Yes. I believe the policy of escorting people in only their boxer shorts, I believe, is applied facility wide. Going back to the modesty point, I understand that the prison asserts an interest in not having the inmates in full dress. Is there anything in the record that defines full dress? There's not, and that's one of the points that we make is that their interest in detecting contraband, as Your Honor said, is they try to justify the boxer short escort policy by contradistinction to a practice of having people in full dress, which they say would prevent the detection of contraband. But there isn't anything explaining what full dress is. I think, though, I mean, what I know is that this is a summary judgment ruling, and all inferences are supposed to be drawn in Mr. Rodriguez's favor. And when they say full dress conflicts with our interest in detecting contraband, and Mr. Rodriguez has said, all I want is a t-shirt on top of the boxer shorts, I think drawing all inferences in Mr. Rodriguez's favor, you would say that the prison officials have not met their burden to show that this particular accommodation he asked for is inconsistent with their reasonable interest. Isn't it logical to assume that if you're concerned about contraband, it's harder to hide contraband when you're not wearing a shirt than when you are? Well, it's not a question. That seems almost obvious. Part of their burden of showing that their regulation is reasonable is showing a logical connection between the practice and a legitimate prison concern. So we'll concede that having a person wear a t-shirt instead of having them nude from the waist up furthers this interest in detecting contraband. But there are other steps in the analysis. There's supposed to be some reasonable fit. It can't be an exaggerated response to that concern. So when you go through the rest of the Turner analysis, I think that's when, you know, I mean, there are really, there are two points to make there. I mean, one is that they only established with their testimony, the defendants, I mean, that full dress was inconsistent with detecting contraband, not that boxers and a t-shirt are inconsistent. So I think their failure to present any evidence addressing the particular accommodation that Mr. Rodriguez was asking for is one problem. But the other problem is, again, going back to the Georgia Department of Corrections policy for this unit, you know, expert correctional officials at the Georgia Department of Corrections decided a t-shirt is consistent with the interest in detecting contraband. So I think when you take those two together, I think a reasonable jury could conclude that, you know, at a minimum, requiring Mr. Rodriguez to be nude when all he wanted was a t-shirt was an exaggerated response to the contraband. But haven't they concluded that the t-shirt was consistent with their needs in a different context, and that is when they're already specifically searching an inmate, right? So that's what they wear prison-wide if they're in the context of a strip search. But three times a week for a shower, I suppose that they wouldn't want to go through the effort of giving the invasive search that they would do in the context of a strip search when they're taking each inmate to the shower three times a week. Isn't that a different context that we can take into account? I mean, there isn't—what we have in the record is the policy, and as I read the policy, it is—it does not contemplate people stripping down for a escort or a strip search or anything else beyond boxer shorts and a t-shirt. I assume that when they say—I mean, when the policy says a person will strip down to boxer shorts and a t-shirt, I mean, I assume that that means drawing all inferences in Mr. Rodriguez's favor. I think the Court should assume that that means that the prison thinks that the escort will not go beyond what the strip search required, if that makes sense. Let me ask you the question this way. Who has the burden of proof to show that a reasonable accommodation of the plaintiff's rights was available without creating a bona fide security problem? Does that burden rest with the prison officials, or does that burden rest with you and your client? I'm not aware of a case of this Court that specifically addresses this burden issue. I think—I know that—I think the Ninth Circuit, some lower courts have said that there is a burden-shifting framework that works like this. The incarcerated person first shows that his or her constitutional rights were violated. Then the burden shifts to the prison officials to explain the—why this practice was reasonably related to a legitimate— The reason I ask the question is this seems to me to be a Supreme Court case alone, the Shabazz, which is pretty directly on point. The Supreme Court reverses the Ninth Circuit because the Ninth Circuit had placed the burden on prison officials to prove that no reasonable method exists by which the prisoner's religious rights can be accommodated without creating a bona fide security problem. The Supreme Court writes—the Chief Justice writes for the Supreme Court that though the availability of accommodation is relevant to the reasonableness inquiry, we have rejected the notion that prison officials have to set up and shoot down conceivable alternative methods. By placing the burden on the prison official to disprove the availability of alternatives, the approach articulated by the Court of Appeals fails to respect and the deference we must give under the Constitution to the prison administrator. Maybe I've misapprehended that, but it seems to me that the burden rests with you, not with them, particularly if we're examining the question for purposes of qualified immunity analysis. They've got to show the act was discretionary, and then you've got to show that it violated the free exercise rights under the First Amendment and that there was clearly established law that would have put them on notice. Maybe I've misapprehended this, but if that's right, how have you met your burden in this case? I think what ALONE stands for, Your Honor, is prison officials don't have the burden to disprove it. Their burden is to show, one, that their practice furthers one legitimate penological interest, and if there is a readily available alternative on the table, they need to show that it's not excessive in relation to that interest. I mean, I think Alameen v. Smith, I mean, really, the ALONE case itself kind of shows that, you know, in that case, the court, it upheld the restrictions there, but in upholding them, it looked to the specific interest advanced by the prison officials. And here, I mean, I think there was an obvious alternative on the table, which was moving Mr. Rodriguez to a cell with a shower in it. Who has the burden to establish that there was an easy and accessible accommodation to wit that they could move him from cell A in wing R to cell B in a different wing? Isn't the burden on your client and you to establish the ready availability of an easy and accessible alternative? I see my time has expired, Your Honor. Yes, I believe that the plaintiff ultimately has that burden. Did you meet that burden in this case enough to beat back summary judgment on qualified immunity? Yes, Your Honor. Mr. Rodriguez mentioned in the grievance that he filed, for example, asked to be transferred to a cell with a shower, asked to wear a T-shirt. The prison officials did not address the transferring to a different cell at all. I've got one follow up question on that. If if Mr. Rodriguez has not attempted his ritual washing practices in his cell with a sink, why? Why would we assume that that couldn't be done? You would assume that it couldn't be done because it was undisputed below that it could be done. I know that the prison officials in their brief in this court said that there wasn't enough evidence that he couldn't perform Gussell in his cell. If you go to the statement of material facts that they filed in the district court document 175-1 paragraph 22, it says he could not. I mean, I'm paraphrasing, but this is it ends with he can he cannot he could perform what do but not Gussell. So I think that's conceded. And that was the statement by the prison. That was the statement of material facts that the prison officials presented, Your Honor. Good morning, Your Honor, and may it please the court. I'm Ellen Cusimano on behalf of the prison officials. I will get into the substantive arguments in the case. But first, I do want to mention that Mr. Rodriguez's appointed counsel has made several arguments on appeal about the free exercise claims. The biggest problems with those arguments, though, is that they were not raised below. For example, if you look at Mr. Rodriguez's brief that he filed below, it is split into two main sections. You have the statement of facts and then the legal arguments and the legal arguments section. Mr. Rodriguez set forth many legal arguments for the vast majority of his claims. He did not, however, set forth any legal arguments on his free exercise claims. I think the law is clear that Mr. Rodriguez cannot assert arguments for the first time on appeal that were not properly set forth before the district court for its consideration. Let me stop you on that point. I was looking at the plaintiff's handwritten brief in support of his response to the defendant's motion for summary judgment. His docket 181-2. And in that, he argues, the petitioner pro se, the category is characterized C, religious freedom claim, body cleansing. He says that he brought a claim as a Muslim, that he has a mandatory responsibility to wash, etc. And then he writes, and I read the following. He says, defendant at no time have shown that they have provided any less restrictive means of providing Rodriguez with the opportunity to fulfill his obligations to properly cleanse himself pursuant to his religion. And then he goes on to say under that topical heading, moreover, showers are in the cells of E, F, and D wings of the prison. The defendants never attempted to move Rodriguez to such wings. It's a pro se pleading, but doesn't he assert there that there was a readily available, easily accessible alternative that he could be given without causing any great prison problem? And then he says the same thing in what he characterizes as the plaintiff's statement of disputed material facts in opposition to the defendant's motion for summary judgment, docket entry 181-1. And he writes on page five, among other things, he enumerates that showers are in fact provided in the cells throughout E, F, and D wings and makes another reference there to what he had said in his brief. Why isn't that enough to fairly put the prison officials on notice of the nature of his free exercise claim to it? I'm Muslim. I need to shower every day. It's a requirement of my religion. You're not letting me do it. I asked to be moved to another wing. You never did. There are showers available in three other wings of the prison. Why isn't that enough at least to make the claim? He may not have proven it, and he may not have had enough to beat back the summary judgment motion. But I'm hard pressed to understand why that amounts to a waiver or forfeiture of the claim itself. Well, Your Honor, those are in his statement of facts, and those are just facts. So, for example, saying that there are showers or cells with showers in them, that is a fact. And I think Mr. Rodriguez has to do much more to actually make a legal argument based on that fact. And that is something he clearly knew how to do because in the rest of his legal argument, again, he went through and he specifically addressed the rest of his causes of action. He never took that next crucial step of actually making a legal argument. Don't we extend more grace in that regard to a pro se plaintiff, especially one who has requested an attorney and been denied an attorney? Yes, Your Honor, but I would note that this court has said on multiple occasions that even though pro se briefs must be construed liberally, that does not give a court license to serve as a facto counsel for a pro se party. I do think it's worth mentioning that if this court had received an appellate brief by a pro se inmate that contained legal argument on, say, three of his claims, but no legal argument on his fourth claim, I find it highly unlikely that this court would then try to come up with arguments for the pro se plaintiff or scour through the pro se plaintiff's facts to try to create an argument on his behalf. The problem that I'm having with the argument is the first thing I read to you was not from his material statement of facts, but rather from his brief in support of and in response to the motion for summary judgment. And what I read to you was under what he characterizes as C on page three, and it's characterized religious freedom claim, body cleansing. Then he lays out his claim that he says he's entitled to bathe every day and that he's required to do it because of his religion. And then he points out that there is a readily available accommodation. Those are my words, not his. He says defendants at no time have shown that they've provided any less restrictive means of providing him with the opportunity to fulfill his obligations to properly cleanse himself pursuant to his religion. There were showers in the cells of E, F, and D wings of the prison. The defendants never attempted to move Rodriguez to said wings. What am I missing? Why isn't that enough to say? A, my rights under the First Amendment have been denied. B, I accept it's in a prison, but there was a readily available alternative. And again, Your Honor, I did think that that was just in the statement of facts, but but apparently I must be mistaken. You are because I'm reading specifically from the plaintiff's brief in support of his response. That's docket entry 181.2. So let's just assume he's raised it well enough to bring a free exercise claim to shower claims accessibility. Is that enough to meet his burden? No, Your Honor. I think his claim with respect to the cleanliest aspect claim fails for two reasons. The first reason is that Mr. Rodriguez has not shown that limiting him to three showers a week substantially burdens his ability to perform the cleanliness ritual. As an initial matter, he's able to do that three times a week in a shower. And for the other four times a week, it is undisputed that he has a sink, soap and towels in his cell that he can use to clean himself. I mean, I agree with your with your opponent that in paragraph 22 of your statement of material facts, you said plaintiff had a sink in his cell for all of his time in the SMU. And in using the sink, he was able to perform voodoo, but not. How do you pronounce that? Gazelle gazelle, a more thorough type of cleansing in his religion, which requires more water. I mean, you've admitted that he could not perform that in his in his sink. Yara, I'm not I'm not sure that we did completely concede that. I think I think instead we said that it was it was merely a mere inconvenience to to Mr. Rodriguez. And again, I do think that's something that he can perform using his sink by placing towels down on the floor and and by placing the excess water in the basin of the sink. But again, if if the court disagrees with that, I would, again, like to turn to to the second argument, which is that the policy at issue is legitimate under under Turner and Judge Marcus to answer your question. The burden of coming forward with an alternative is placed solely on the plaintiff. That comes from the Supreme Court's argument in Overton versus Zetta, where the court said that the inquiry in Turner is whether the prisoner has pointed to obvious regulatory alternatives. The Supreme Court. He says he says that the obvious alternative is putting him in a cell with a shower. Why is that incorrect? I think merely identifying an alternative is not sufficient. He also has to show that that alternative is viable and he has not done that here. So, for example, he has not shown that there is a cell that is available to him. I think it's also important to note that in his deposition testimony, he said that he did spend some time on the F wing and G wing, which which did have showers in his cell. But the showers were not operational. And so even though he was in a cell with showers, he still had to be transported to a shower three times a week. So at the very least, Mr. Rodriguez does have to show that those showers were operational. And even setting that aside, even assuming that there was an alternative in this case and that the regulation is unreasonable under Turner, qualified immunity still applies. And I know there has been some disagreement between the parties as to what qualified immunity tests to apply. I think the best thing to do is to look at the Supreme Court's most recent decisions on qualified immunity. One of those decisions is white versus poly, which is 137 Supreme Court 548. The court there reiterated that while there does not have to be a case directly on points, there does have to be a case that places the question beyond debate. Not only that, but the clearly established law has to be particularized to the facts of the case. And so in Paul and White, the court found that the lower court misunderstood qualified immunity because it relied on general principles of law, which is exactly what Mr. Rodriguez is trying to do here. The court said that what the plaintiff should have instead done is identified a case where an officer acting under similar circumstances was held to have violated the Constitution. So applying those principles here, Mr. Rodriguez was required to identify some case with circumstances similar to the ones here. In other words, he has to show that reasonable officers would have known beyond debate that limiting showers to three times a week for Muslim inmates violated the Constitution. And Mr. Rodriguez has not done that here. I do want to very quickly go back to the modesty aspect. Before you do, I have a question about what you just said. I assume for the purposes of my question that we were to agree that he has not carried his burden of showing the availability of showers readily accessible. The prison has come forward with a facially sufficient penological reason. And he hasn't really come forward and shown that there really were showers that were available, who used them, when, how many, or any of those circumstances. We simply have the bold claim and no facts to support it. And he's got the burden. But he comes back and he says, even if all of that is true, I had no way of being able to establish the proposition. I was without counsel. I asked for counsel. And this is a case where the district court was obliged to appoint counsel, not at the appellate stage as we did, but at the time that he had filed his complaint in the trial court. Was it an abuse of discretion under these peculiar circumstances to deny him access to counsel? No, Your Honor, not at all. Counsel can only be applied in these types of cases and exceptional circumstances. And the fact that he may not have met his burden of showing that this was a reasonable alternative does not alone merit the appointment of counsel. Especially since here he could potentially have met that burden by, again, simply showing that showers were available to him and showing that showers were operational. How can he do that, though, without counsel, other than asserting on his own knowledge that in three other wings there were showers in cells? He sought one. They said no. What more was he in a position to do, acting pro se in a reasonably high-level security prison? He could have sent interrogatory requests to the defendants in the case. Several of the defendants in the case were SMU supervisors who were familiar with the cells in the SMU. He could have asked them questions about how many cells have showers in them and whether those cells were operational. So there were avenues he could have pursued to get that information. And he could have done that without counsel? That is correct. In fact, in this case, he did indeed send requests for admissions, document requests, and interrogatories to defendants in the case. And I see that my time is up. So thank you. I just wanted to make three points. The first, on this question about waiver, is the question the court had sort of indicated, you know, Mr. Rodriguez was pro se and his filings were liberally construed. And I think that's enough to deal with that issue. I just want to note also that we would argue that the defendants did not meet their initial burden in summary judgment on this particular claim because they noted in their own statement of material facts that there were showers in cell in three of the SMU's six wings, and they didn't address this potential accommodation at all of moving him to one of those cells. Are those wings a different security level than the wing that he is in now or was in at the time of this claim? That is not, I don't think that's in the record. I can state my place that it's not necessarily different security levels, but there are, my understanding is that the SMU has like a phased program and people are generally like in one of, right now, one of five phases. But they do, being in a phase does not, normally the wings are associated with particular phases of the program, but not always. Some people are in one phase, but they're not in the wing that's normally assigned to that phase. So the bottom line is people, with the exception of one wing, the securities restrictions are about the same in all the wings. Because my understanding was that he was moved to a new wing after he killed another inmate. Has there been any discussion in the record of why he was moved to that wing or what the different requirements were? He was placed at the SMU because he allegedly killed an inmate. He was not, he was, B wing was about as far as he could go in the program. But there's no evidence about why they didn't put him in a different cell. On the qualified immunity point and the issue about who has the burden, I might have misspoken earlier. I mean, I do want to be clear. I understand that Mr. Rodriguez ultimately has the burden of showing that the prison policy is unreasonable. Let me just ask you in particular, just speaking for myself, he said enough in his brief to raise the free exercise claim and to say that there was something else available that they could have given to him. My problem is that's all he said. He put nothing else on the table. We know nothing about those showers. We do not know, one, whether they're operational. We do not know, two, how many there are. We do not know, three, when or under what circumstances prisoners are assigned to those showers. We know nothing about its ready, readily availability in this case. Your client knew how to seek answers to questions, file interrogatories, and so on. He did that, but he didn't do anything to establish a single fact regarding the availability of these other showers. Isn't that a problem for the claim? If he has the burden, as you have to concede he does in this context? I assume my time has expired. No, please, I'd really like your help with me on this issue. Two things. First of all, we do know how many cells roughly had in-cell showers. It's half the SMU. How do we know that? Because there are six wings and three of them had in-cell showers. Now, this is at his deposition. He testified to that and it was uncontradicted. He did say at his deposition that he was in some cells when he was in the wings that had in-cell showers. Some of the cells had showers that didn't work. Now, I mean, I don't think that necessarily means, I don't think you should extrapolate from that, that like most of the cells have broken showers. There's one important thing that all those cells had that his cell in B wing did not have, and that's a drain in the floor. So at least then, I mean, he wouldn't have had to worry about, he possibly could have done GUSL just using his sink even if the shower didn't work. Did he make that argument? He did not make that argument, but I'm just addressing the concern about, you know, I don't think it matters that some of the cells had broken shower fixtures and some didn't. The most important thing is they had a drain in the floor. So the other thing I just want to say is I think it's wrong to look at transferring him to a different wing issue as just an accommodation. I think the right way to look at it is this is a whole other policy that kept him from complying with his religious obligations. In other words, they decided to keep him in B wing instead of moving him to a cell with a shower in it. And when you look at it that way, I think it's clear why this is not a good qualified immunity case, because there's this policy that actually moving him to a cell with a shower in it would have addressed their asserted penological interests better than. Let me ask, since you've raised this qualified immunity issue, is there any published decision from this court or from the Supreme Court of the United States that would have put the prison officials on notice that an inmate who is Muslim and claims the religious need to shower seven days a week had to be accommodated in this way? Where the prison comes back and says it's a very expensive, costly thing. We need three to five guards to accommodate and move a prisoner from the cell to the shower, et cetera. Is there any case on point? There is no case that addresses that specific issue that Your Honor just raised, but there are plenty of cases. Turner was one of them. This case has a few. Hakeem versus Hicks. Elamine versus Smith. The reason I raise it is because if you look at Turner, the problem is the Supreme Court speaking at a high order of abstraction and says there's a four-part test that we apply. One, is there a valid, rational connection between the regulation and the legitimate and neutral government interest to justify it? Two, whether there are alternative means. Three, the extent to which an accommodation of the asserted right will have an effect on the prison guards, et cetera. Four, whether the regulation represents an exaggerated response to prison concerns. They're stated at a very high order of abstraction, and I'm not sure that you can fairly say that the answer to this question so jumps off the page that even though there isn't anything specifically on point, the prison officials would have to know that the First Amendment required them to accommodate not three days a week, but seven. That's the problem, if you could help me with. Yes. I mean, again, I think the linchpin here is that there was an obvious alternative, moving him to a cell with a shower, that they didn't present any evidence on. They didn't explain why they couldn't do it, and they themselves recognized implicitly that they recognized that half the showers in the unit, or half the cells in the unit had showers in them. So, I mean, but it would have been different if they had come forward and said, we are not moving him to a different cell because all those cells are being used or because those are different security level or anything. If they'd said anything at all, this would be a harder qualified immunity case. But the fact that this obvious alternative was there, and they didn't say anything about it, would support an inference that they had no legitimate reason at all for keeping him in a cell that did not have a shower, and that could support a conclusion that the prison regulation was arbitrary, and at a minimum, that's what Turner v. Safley prohibits. Thank you very much. Thank you. Mr. Primerano, I notice that you are court appointed, and we very much appreciate your service to the court and your client. Thank you.